observing a man getting onto a bus in Lewiston, Maine is insufficient for purposes of probable cause that that is the same man that the police were, that had been using the identity of Cash in the wire intercepts that they were receiving. In this case, the police had failed to correctly identify Cash in the beginning. They had someone else's name attached or someone else's identity attached to Cash. When they saw him get on the bus, they had no idea who he was. They didn't learn that that person who was getting on the bus was getting off the bus in Portland from Boston. And that is what I believe is the shortcoming in terms of probable cause. But learning who he was and deducing from the circumstantial evidence what he was are really two different things. You can't overlook the fact that the officers had wiretap information, which they could have presumed to be reliable for purposes of their inquiry, that indicated to them that there was going to be a drug pickup. And they tracked a man who followed precisely the pattern that that wiretap information predicted. Now that's not a certainty that that's the same man who was unidentified in the wiretap conversations. But I think there may be enough there to be probable, which is all that's required at this point. Your Honor, what I'm asking the court to do is look at the difference between what was not probable cause and subrome and what was reasonable articulable suspicion in Alabama v. White. I agree with you that the wiretap information and the presence of this man getting on the bus and in Portland and then taking the cab to Lewiston is reasonable articulable suspicion. I agree that. What I don't agree with is that that also amounts to probable cause. If it were probable cause, the very similar circumstances in Alabama v. White would have been analyzed under the probable cause rubric. And it would, because if there were probable, I mean the consequences, if there were probable cause, then there would be no reason for reasonable articulable suspicion. And then there would be no reason to bring the dog because they could have arrested him the second they saw him get into the cab that was going to Lewiston. But that's not what they did here. And the reason that they did that was because they didn't actually have probable cause. And that is sort of the... Don't we have to presume, based on the testimony in the record, that the reason they didn't arrest him when he got in the cab is they didn't want to blow the wiretap. So they wanted to come up with a pretext, at least as far as he would see it, some other reason to arrest him. Which that was the testimony and the court believed that testimony. Well, and I understand that, Judge Kean. I mean, they certainly had that as a rationale, but that doesn't negate the problem with probable cause here. Well, go back to as opposed to what they didn't have. As I understand it, what they had was they had from the wiretap the timeline for the trip. In other words, when the trip would initiate, they had the destination of the trip. They had that he would arrive in a vehicle driven by an elderly person. And they had the very unusual itinerary of getting on in Lewiston, going to Boston, coming back, getting off in Portland and going right into a cab to Lewiston. Pretty unusual facts, and he matched it all. Plus he matched, to the extent they had any description of the pickup person in Boston, he at least racially matched that. So when we put all that together, explain why that isn't probable cause. For me, the issue here is being able to attach the identity of the man that they were observing, Pierre Azor, with the identity of the information. They didn't need to know his name. No, they didn't need to know his name, but they did need to know who they meant to accuse. I think that the information about who they meant to accuse was relevant based on what information was coming across the wiretap. How many people that day took that itinerary that the wiretap told them the person would be taking? But that's not information we have. And the reason we don't have that information is because the police officer, he wasn't relying on the wiretaps to tell him when he was going to be in Portland. His testimony was, I was relying on the bus schedule. When he was in Portland, he didn't go and observe the people that came off the bus from Boston. He observed people who came out of the terminal, who could have come from any number of places, who could have been waiting there all day. When the officer polled Mr. Azor over, his story was, I was in Portland and I was trying to get home from Lewiston, or get home to Lewiston because I had spent the night in Portland. It would be sort of reasonable to suggest that, well, I was trying to catch a bus back to Lewiston, but I couldn't, so my other option was to take a cab. At that point, there's no problem in terms of both his story, his identity, and what he's doing, other than the fact that they have wiretap information and that they believe that Cash is the man that they're with in the cab. Although there's very little evidence, based on what the officers knew, that they knew anything about the man that got on the bus, other than he was showing up at about the time that the wiretap suggested he was going to get on the bus, and that he was, in fact, in Portland when the itinerary was that they expected the person who went to Boston to pick up the drugs. They knew, did they not, that he was the same man or matched the description of the man who had gotten on the bus in Lewiston that morning? Well, it's the same man. We don't dispute that it was the same officer. Not only was it the same man, but they knew that. So they have this itinerary, which is a rather unusual itinerary. So the question is, here's a fellow, Bamser, if he precisely matches the itinerary, shows up at the bus station, driven by an elderly woman, so on and so forth, shows up again on the return leg, takes the taxi, just as the wiretaps had predicted, we're dealing with probability. So the question is, how likely is it that someone else on that day would have followed that sort of itinerary? I suggest that common sense tells you that the degree of likelihood is close to zero. Your Honor, the facts that you just outlined were exactly the facts that were analyzed in Alabama v. White. In Alabama v. White, it was very clear that it was reasonable articulable suspicion. And given that it was reasonable articulable suspicion, the next step then was to stop for long, and our assertion is that it was. Thank you. Thank you. Ms. Leibis, good morning. Good morning, Your Honor. Before you start, at some point, I want to talk to you about the severance issue. So keep that in mind. Yes, Your Honor. May it please the Court, Julio Lopez v. United States, I am happy to address all three issues that the defendant raises in his brief, and I am happy to address the severance issue. Well, why don't you start with severance, since Judge Toroya has expressed an interest in it? Certainly. Your Honor, our view is that this Court should affirm the District Court's severance ruling, because it was appropriate under 8b, first, that the counts 1 and 5 were joined in this indictment. The District Court correctly found that there was overlapping evidence and witnesses regarding both counts 1 and 5, and it's also fair to read count 5 as a substantive act in furtherance of the count 1 conspiracy, which is what the government had argued to the District Court. Well, if that's so, why didn't you charge him with being part of the conspiracy also? Your Honor, I can't speak to the specific charging decision. There are all sorts of reasons that one might not charge someone with a conspiracy, but that person could still be in an unindicted co-conspirator, and in fact that was what the government did argue in our papers below to the District Court, that Azor should properly be viewed as an unindicted co-conspirator in count 1. What kind of drugs were involved in the conspiracy? The conspiracy involves three drugs, oxycodone, heroin, and cocaine base, and the count 5 possession with intent to distribute that charged Azor and Romilly Dasnow involved oxycodone, so one of the three drugs involved in the conspiracy. In addition, the wiretap evidence showed that Azor discussed not just oxycodone, which were referred to as blues over the wiretap, but also he referred to heroin. He used the word brown over the wiretap, which the agents testified they understood to mean heroin, and Azor also at one point discussed with Dasnow the quote-unquote white stuff, which the agents understood to mean cocaine base. So there is evidence that Azor had knowledge of or was discussing with Romilly Dasnow, not just oxycodone, but heroin and cocaine base as well. And if you look at the timing of the counts here, the count 1 conspiracy is charged beginning on a date unknown but not later than early 2012 and continuing through May 2014. The substantive count against Azor and Dasnow occurred on March 22, 2014, so that is also within the time frame of the conspiracy. In addition, the district court found correctly in our view that Azor, based on the evidence proffered by the government below, was connected not just to Romilly Dasnow, who he was charged with in count 5 and who was charged in the conspiracy, but also other defendants in that indictment, including Dimitri Gordon, who was known as Jimmy. There was discussion over the wiretap about Jimmy's ability to move quantities of oxycodone pills. That was a discussion between Azor and Dasnow. There was a connection to Carrie Buntrock, who was charged in the indictment. She is the person who in fact dropped Azor off at the bus station for this oxycodone resupply trip. And there was also a connection to Pierre Dubois. He was the person speaking with Romilly Dasnow while Azor was down in Boston and was recorded over the wiretap saying that he had deposited someone, who the agents believed to be Azor, at the bus station in Boston, and it was on that return trip that Azor was found with the oxycodone pills. What other facts would be required here for severance to be appropriate? For severance to be appropriate, Your Honor? Well, in our view, there really was no sufficient prejudice alleged that would demand severance in this case. Well, here you have a major conspiracy with a tremendous amount of evidence against a group of defendants, and all you have is a separate single count against this defendant. It would seem to me the right case to sever. Your Honor, this Court's precedents are very clear that it's the defendant's burden, first of all, to establish precedents that there has to be some showing of substantial prejudice or a fundamental unfairness, and that garden-variety complaints of spillover... Well, here I reckon it would seem to me a typical spillover case. Correct, Your Honor, and my reading of the Court's precedents is that typical spillover is not sufficient. In other words, the defense has to show something very specific about the evidence that would cause him a specific trial right to be prejudiced, and that in the case of typical spillover, simply arguing that I'm more likely to be convicted because of the evidence against the other people charged with me is not sufficient, particularly when there is the ability to have a cautionary or a limiting instruction to the jury. The District Court judge found in this case that he did not believe that the evidence was so overwhelming that he could not provide the limiting instruction to the jury, and this Court gives significant deference to a District Court's decision. I believe it's an abuse of discretion review on severance, and so we would argue that there was no abuse of discretion in the decision here not to sever Mr. Azor from the other defendants. If I may move on to the suppression ruling, our view is the key question here and really the only question the Court needs to answer in order to affirm the District Court's denial of the suppression hearing is whether at the time Trooper Jacob pulled over that taxi on the interstate, there was probable cause to search that taxi for evidence of drug trafficking. We believe that the record quite clearly shows that there was such probable cause. What do you say to your brother's argument that Alabama were against white? The Supreme Court's opinion in that case suggests a different outcome. Your Honor, that is an anonymous tip case, which is quite different from a wiretap case. I think, as Judge Shelley, you said to Attorney Andrews, presumably one can rely more when the information is coming straight out of the target's mouth, as it was in this case. So we don't have that added layer of being concerned about the reliability of the tip. We have Azor and Dasano themselves discussing Azor's specific travel plans. And then, Judge Shelley, as you had noted, the movements that the troopers observed in this case tracked precisely those travel plans that were discussed over the wiretap. Azor had said on the wire that he planned to take the 150 bus from Lewiston. He and Dasano discussed plans to meet. Dasano said he was with a quote-unquote elderly. When Trooper Pappas set up at the bus station in Lewiston to conduct surveillance, he saw the man that he identified as in the blue jacket and the black hat get out of a truck that he knew belonged to Carrie Buntrock, a woman in her 60s who was known to be part of the investigation. It may not be a propitious panel for you to be arguing that someone in their 60s is elderly. Fair enough, Your Honor. Those are not my words. Those are Romilly Dasano's words. And I would note also that the indictment notes that the alias for Carrie Buntrock, as part of this drug conspiracy, apparently was Grandma. So that was Romilly Dasano's view of her. And so what we have is a reasonable basis, certainly for the troopers to believe at that point, that the man they saw getting out of Carrie Buntrock's truck was the same man they heard discussing the oxycodone resupply truck over the wire. And then they hear later on Pierre Dubois and Romilly Dasano discussing how Dubois had put somebody back on the bus. Dasano jokes that he'll probably have to bail that person out. So the reasonable inference from that is that the person he put on the bus is engaging in some sort of criminal activity. Based on that, Trooper Pappas goes to the bus station in Portland and sees the same man he saw get on the 150 bus, who got out of Carrie Buntrock's truck, got on that 150 bus. The same man comes out of the bus station in Portland later that evening. That is exactly the travel plan that Pierre Azor, over the wire, indicated he intended to take. And so based on that, we would argue that there was sufficient probable cause at the time Trooper Pappas saw that taxi head north to Lewiston to stop and search the taxi. My colleague, Attorney Andrews, has indicated that this really should be a reasonable articulable suspicion case and that under that standard, the length of the traffic stop was too long. We would suggest, first of all, that that's not the appropriate analysis because this is a probable cause automobile exception search to the warrant requirement case. However, even if this court were to evaluate this on a reasonable articulable suspicion standard, the government submits that the traffic stop was not unduly extended in order to confirm or dispel the suspicion of drug trafficking. You can stop someone on a traffic stop and then hold them for 20 minutes? No, Your Honor, not if the speeding violation had been resolved at that point. But supposing there was reasonable articulable suspicion of drug trafficking but not probable cause, which is what my opponent has argued here, I would argue that 20 minutes to get a drug dog there to confirm or dispel this suspicion of drug trafficking is within a reasonable time limit. Is there any case you would cite that would say that there's no probable cause to search the car at all? You'd stop it on a traffic violation, no probable cause to search even at that point, but you can on a pretext hold them there for 20 minutes? Your Honor, I don't have a specific case, but drawing from this Court's principles, what the Court discusses in the context of a Terry stop is taking conscientious steps to confirm or dispel the reason for the stop. So if the reason for the stop is drug trafficking, we would argue that this was not unduly lengthy. Thank you. Thank you. Before I address the issue over severance, I would like to make one quick point about the anonymous tip information. Alabama v. White is not an anonymous tip information case. Alabama v. White is a tip from a paid informant. It's different than Florida v. J.L., which is the anonymous information case. And I suggest, and suggested below, that Florida v. J.L. and Alabama v. White and Sobrone all drew a line at who was meant to be accused, and I'm asking for that to be analyzed and decided my way today. With respect to spillover, Your Honor, there was a mountain of evidence in this case. There was wiretap communications that detailed a large drug conspiracy throughout the city of Lewiston, Maine. And the information related to Pierre Azur was very small in respect to that. Now, there were some discussions about other drugs, although I'm not sure that the police believed when he was discussing White that he was discussing cocaine. He may have been discussing mauling at the time. And I agree that those conversations occurred, but I don't think that those are enough to tie him into a conspiracy. If we were to rule your way, wouldn't the pragmatic effect of that simply be to encourage the prosecution to, in situations like this, add an additional count, charging him with a conspiracy on the theory that if you're in any part of the conspiracy, you're on the hook for the whole thing? Well, but it's not the whole thing. His conspiracy was only to transport oxycodone from Massachusetts to Maine. Now, that's what he's presently charged with, but that's not to say he couldn't be charged. We've got lots of cases that say that just because you do only one act within a conspiracy doesn't mean you can't be charged with being a participant in the entire conspiracy. And I agree that there may have been other information, but I think that I also agree with Judge Teruea and St. Hill. Don't agree with me because I haven't said anything that requires agreement. Well, I guess what I meant to say, Judge Teruea, was I would analyze it in the way that you analyzed charging decisions in St. Hill and that drug quantity related to the small charge, the dog that wagged the tail, and the larger charge. And I am worried that we have another consequence in this situation with spillover that is like St. Hill where the government is using the mountain of evidence attributed to all of the other people, and I believe that there were almost 12 people in this case, that almost certainly would have inflamed the jury with respect to my client, specifically given... Your time is up. Thank you. Thank you.